UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———

SHARIEFF MASSEY,

               Plaintiff,                    Case No. 1:13-cv-1151

v.                                      Honorable Robert J. Jonker

KRISTINE GERLING et al.,

               Defendants.

_____/

## OPINION

       This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A. The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Factual Allegations**

Plaintiff Sharieff Massey presently is incarcerated with the Michigan Department of Corrections (MDOC) at the West Shoreline Correctional Facility (MTF), though the conduct underlying his complaint occurred while he was housed at the Pugsley Correctional Facility (MPF). He sues the following officials within the MDOC and the MPF: MPF Qualified Mental Health Practitioners (QMHPs) Kristine Gerling, D. Herkelsteen and Carol Kenison; MPF Hearings Investigator and Grievance Coordinator Gary Monroe; MPF Assistant Deputy Warden Kevin Smiley; MDOC Northern Region Mental Health Services Manager Thomas Osier; fomer MPF Chief Psychologist Brian Majerczyk; and MPF Chief Psychologist David Arkesteyn.

Plaintiff alleges that he was interviewed by the Michigan Parole Board on April 6, 2012.[1] The parole board deferred its decision pending completion of a psychiatric examination. On May 22, 2012, Defendant Majerczyk sent the parole board a psychological evaluation report recommending that Plaintiff be referred to the Sexual Offender Program (SOP). Plaintiff alleges that, before completing the psychological evaluation, Majerczyk interviewed Plaintiff for about one hour. During the interview, Plaintiff discussed the fact that he had never been convicted of a sexual assault and that his prior referrals to SOP were based on a series of sexual assault misconduct convictions in 2007 and before. Near the end of the interview, Majerczyk told Plaintiff that his background did not merit placement in the SOP. However, Majerczyk subsequently completed two

---

[1] The Court notes that the instant case is one of three civil rights actions filed by Plaintiff within a two-week period. *See also Massey v. Combs et al.*, No. 1:13-cv-1161 (W.D. Mich.); *Massey v. Walker et al.*, No. 1:13-cv-1116 (W.D. Mich.). In all three cases, Plaintiff complains that, since 2007, he has been required to participate in the Sexual Offenders Program (SOP), despite not having been convicted of sexual assault. He has sued multiple QMHPs and grievance responders, as well as members of the parole board, based on their actions to require him to attend SOP, to terminate SOP, and to deny his parole. The instant action involves the same underlying dispute, but relates only to events occurring in 2012 and 2013.

assessment instruments, the Vermont Assessment of Sex Offender Risk (VASOR) and the Static 99-R, which indicated, respectively, that Plaintiff was at moderate or high risk of reoffending. Majerczyk thereafter recommended to the parole board that Plaintiff complete the SOP. The parole board denied parole on June 4, 2012.

After his parole was denied, Plaintiff asked Majerczyk why he had recommended SOP after telling Plaintiff that he was not going to recommend SOP. Majerczyk explained about the VASOR and Static 99 test results, and he advised Plaintiff that he did not find mitigating factors that would withstand the risk scores. Plaintiff complained that his five-year record of positive institutional behavior since the misconducts should be considered mitigation. He also complained that he had attempted to complete SOP in 2009, but he had been involuntarily terminated from the program because of something he wrote in a response to a homework assignment. In addition, Plaintiff complained that, for at least some period in 2011, he was removed from the SOP waiting list because he no longer qualified for services. Majerczyk refused to print a copy of his report for Plaintiff at that time, advising him that he would have to pay for a copy. He told Plaintiff to request another appointment once Plaintiff had received his copy of the psychological evaluation.

Several weeks later, Plaintiff did just that. Plaintiff complained that Majerczyk had betrayed him by portraying him in an unflattering way. Majerczyk advised Plaintiff to get into therapy and complete the program, so that he could go home.

In November 2012, Plaintiff asked Warden Shirlee Harry to arrange to transfer him to a facility that offered SOP. Harry told Plaintiff that she would look into the matter. Two weeks later, Defendants Gerling and Herkelsteen summoned Plaintiff and informed him that an SOP group was beginning in January, 2013, and that Plaintiff could participate in the program. Plaintiff began

the program in January. The January group-therapy report issued by Gerling indicated that Plaintiff was observed having an erection and touching himself during therapy, and he was warned that he should not engage in that behavior. (Ex. G to Compl., Page ID#57.) In the February monthly report, Gerling noted that Plaintiff had been counseled on his lack of boundaries and poor judgment. (*Id.*, Page ID#58.) The March report, issued by Gerling on April 1, 2013, indicated some improvement. (*Id.*, Page ID#59.)

On April 5, 2013, one of the other SOP participants was scolded for allowing another prisoner to draft an assignment for him. The prisoner cried and admitted the conduct, and he was told that he would be notified if he would be allowed to continue in the program.[2] Defendants Gerling and Herkelsteen next interrogated Plaintiff about the assignment Plaintiff had turned in on April 2, 2013. The theme of the assignment was to identify triggers associated with Plaintiff masturbating in the segregation unit of the county jail, which happened in full view of female staff. Plaintiff completed the assignment, but used the opportunity to describe his penis and the actions he engaged in, discussing in detail the stroking of his erection at various times to draw attention to his body. Plaintiff read his response to the group, and he was strongly confronted by other participants about its inappropriate content. Plaintiff defended his response to the assignment, arguing that he had the right to free speech and had not done anything wrong, because he had not used profanity, was not racially threatening and did not suggest the use of violence. Plaintiff was told to leave the room, and he was advised that he would be informed if he was being terminated from the program.

---

[2] From Plaintiff's later allegations, it appears that the prisoner subsequently was allowed to return to the program.

On April 7, 2013, Plaintiff met with Defendant Gerling and was notified that he was being terminated from the program. Plaintiff complained that he was being subjected to discrimination because, as a black male, his sexual expressions were different from the others in the SOP, who were all white prisoners. On April 16, 2013, Defendant Gerling issued a therapy termination report, in which she concluded that Plaintiff had acted out repeatedly during therapy, stroking his erection through his clothing. Gerling also highlighted Plaintiff's inappropriate response to his written assignment. She concluded that Plaintiff showed little insight into the inappropriateness of his behavior, that he did not see what he did as wrong, relying only on external consequences to control his behavior, which would not be effective outside of prison. She concluded that he needed continued treatment to address his thinking errors and predatory behavior and that he was not psychologically ready for release, as he presented a very high risk of reoffending. (4/16/13 Therapy Termination Report, Ex. G to Compl., docket #1-3, Page ID##62-64.)[3]

Plaintiff filed a grievance about Gerling's decision to terminate him from the SOP. Defendant Kenison interviewed Plaintiff on the Step I grievance. Despite Plaintiff's request for an extension of time and his objections, Kenison denied the grievance. Plaintiff asked to be transferred to another facility, where he could continue his SOP participation. Kenison told Plaintiff that he would have to wait at least six months before he could try SOP again. The Step I grievance denial was approved by Defendant Arkestyn. Plaintiff filed a Step II grievance, which was denied by Defendant Osier on July 22, 2013. Plaintiff appealed to Step III. Nurse S. Laughhunn and Richard

---

[3]The Court observes that Plaintiff also was terminated from the SOP in 2009, after writing a similar, sexually self-aggrandizing response to a homework assignment. (*See* Ex. E to Compl., docket #1-2, Page ID##50-51.) The earlier SOP termination is the subject of another of Plaintiff's lawsuits. *See Massey v. Walker et al.*, No. 1:13-cv-1116 (W.D. Mich.).

D. Russel denied the Step III appeal. Plaintiff wrote letters to Defendants Smiley and Monroe on August 28, 2013, neither of whom responded.

Plaintiff alleges that Defendant Gerling violated his First Amendment right to free speech when she effectively punished him, by terminating him from the SOP, on the basis of his written homework assignment. Plaintiff also alleges that Gerling violated the Eighth Amendment when she terminated him from the SOP, despite knowing the physical stresses he was experiencing from his exposure to other SOP participants and because of his upcoming parole interview. Plaintiff contends that Defendant Herkelsteen negligently violated the First and Eighth Amendments as an adjunct facilitator of the SOP. In addition, Plaintiff contends that Defendant Kenison violated the Eighth Amendment and the Due Process Clause of the Fourteenth Amendment when she denied his Step I grievance. Further, Plaintiff asserts that Defendant Monroe failed to exercise due diligence in responding to his urgent request for documentation to support his grievance. Moreover, Plaintiff complains that Defendant Smiley violated his rights under the Due Process Clause when he failed to ensure that Defendant Monroe provided Plaintiff documents Plaintiff had requested. Plaintiff next alleges that Defendant Osier violated his rights under the Eighth Amendment when he denied the Step II grievance. He also alleges that Defendant Majerczyk was medically negligent in using the VASOR and Static 99 assessment instruments, resulting in Plaintiff being kept in prison for a longer period. Finally, Plaintiff alleges that Defendant Arkesteyn violated his rights under the Due Process Clause and the Eighth Amendment when he denied Plaintiff's Step I grievance.

Plaintiff seeks declaratory and injunctive relief, together with compensatory and punitive damages.

**Discussion**

I.    Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by

a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.    Defendants Kenison, Arkesteyn, Osier, Monroe & Smiley

Plaintiff alleges that Defendants Kenison, Arkesteyn and Osier violated his right to due process when they denied his grievances. In addition, he alleges that Smiley and, by implication, Monroe violated the Due Process Clause when they failed to supervise their subordinates or respond to his letters, thereby depriving him of a fair grievance process.

Plaintiff fails to make specific factual allegations about Defendants' conduct, other than his claims that they failed to supervise their subordinates and failed to adequately investigate or respond to his grievances. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability based upon the mere failure to act. *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

In addition, the Sixth Circuit and other circuit courts have held that there is no constitutionally protected due process right to an effective prison grievance procedure. *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). Because Plaintiff has no liberty interest in the grievance process, the conduct of Defendants in reviewing his grievances or failing to provide information did not deprive him of due process.

In sum, Plaintiff has failed to allege that Defendants Kenison, Arkesteyn, Osier, Monroe or Smiley engaged in any active unconstitutional behavior to deprive him of a protected right. Accordingly, he fails to state a claim against them.

### B.    Defendants Majerczyk, Gerling and Herkelsteen

Plaintiff alleges that Defendant Majerczyk was medically negligent when he relied on the VASOR and Static 99 tests in completing a psychiatric evaluation of Plaintiff that was used for parole consideration. Plaintiff also alleges that Defendant Gerling violated both the First and the Eighth Amendments when she terminated his participation in the SOP. In addition, he alleges that

Defendant Herkelsteen negligently violated the Eighth Amendment as the adjunct facilitator of the SOP under Gerling.

### 1. Defendant Majerczyk

Plaintiff claims that Defendant Majerczyk acted negligently in relying on the VASOR and Static 99 tests in completing his psychological evaluation, resulting in Plaintiff being denied parole. Plaintiff's allegations of negligence fail to state a claim under either the Due Process Clause or the Eighth Amendment.

### a. Due Process

"[P]rocedural due process prohibits arbitrary and unfair deprivations of protected life, liberty, or property interests without procedural safeguards." *Howard v. Grinage*, 82 F.3d 1343, 1349-50 (6th Cir. 1996) (citing *Daniels v. Williams*, 474 U.S. 327 (1986)). A claim of negligence is insufficient to support a § 1983 claim. *Daniels*, 474 U.S. at 333-36. Instead, to state a procedural due process claim, a plaintiff must allege a constitutionally arbitrary deprivation. *Id.*; *Howard*, 82 F.3d at 1350 ("'[A]rbitrary in the constitutional sense' for procedural due process purposes means conduct undertaken with something more than negligence."). To state a claim based on the deprivation of procedural due process, the "conduct must be grossly negligent, deliberately indifferent, or intentional." *Howard*, 82 F.3d at 1350. Because he expressly alleges that Majerczyk acted only negligently, Plaintiff's allegation that Defendant Majerczyk violated his due process rights fails to state a claim.

Moreover, even had Plaintiff alleged that Majerczyk acted intentionally to write a false psychiatric report that influenced Plaintiff's eligibility for parole, Plaintiff would nevertheless fail to state a due process claim. To establish a procedural due process violation, a plaintiff must

prove that (1) he was deprived of a protected liberty or property interest, and (2) such deprivation occurred without the requisite due process of law. *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby*, 470 F.3d 286, 296 (6th Cir. 2006); *see also Swihart v. Wilkinson,* 209 F. App'x 456, 458 (6th Cir. 2006). Plaintiff's complaint that Majerczyk's actions led to his parole denial fails to raise a claim of constitutional magnitude because he has no liberty interest in being released on parole. There is no constitutional or inherent right to be conditionally released before the expiration of a prison sentence. *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). Although a state may establish a parole system, it has no duty to do so; thus, the presence of a parole system by itself does not give rise to a constitutionally protected liberty interest in parole release. *Id.* at 7, 11; *Bd. of Pardons v. Allen*, 482 U.S. 369, 373 (1987). Rather, a liberty interest is present only if state law entitles an inmate to release on parole. *Inmates of Orient Corr. Inst. v. Ohio State Adult Parole Auth.*, 929 F.2d 233, 235 (6th Cir. 1991).

In *Sweeton v. Brown*, 27 F.3d 1162, 1164-165 (6th Cir. 1994) (en banc), the Sixth Circuit, noting "the broad powers of the Michigan authorities to deny parole," held that the Michigan system does not create a liberty interest in parole. In a recent published decision, the Sixth Circuit reiterated the continuing validity of *Sweeton*. *See Crump v. Lafler*, 657 F.3d 393, 404 (6th Cir. 2011). In *Crump*, the court held that the adoption of specific parole guidelines since *Sweeton* does not lead to the conclusion that parole release is mandated upon reaching a high probability of parole. *See id.*; *see also Carnes v. Engler*, 76 F. App'x 79, 80 (6th Cir. 2003). In addition, the Sixth Circuit has rejected the argument that the Due Process Clause is implicated when changes to parole procedures and practices have resulted in incarcerations that exceed the subjective expectation of the sentencing judge. *See Foster v. Booker*, 595 F.3d 353, 369 (6th Cir. 2010). Finally, the Michigan

Supreme Court has recognized that there exists no liberty interest in parole under the Michigan system. *Glover v. Mich. Parole Bd.*, 596 N.W.2d 598, 603-04 (Mich. 1999).

Until Plaintiff has served his maximum sentence, he has no reasonable expectation of liberty. The discretionary parole system in Michigan holds out "no more than a mere hope that the benefit will be obtained." *Greenholtz*, 442 U.S. at 11. The denial of parole, therefore, implicates no federal right.

Because Plaintiff has no liberty interest in being paroled, he cannot show that Majerczyk's false report was relied upon to a constitutionally-significant degree. *See Caldwell v. McNutt*, No. 04-2335, 2006 WL 45275, at *1 (6th Cir. Jan. 10, 2006) ("[E]ven if the Parole Board relied on inaccurate information to deny Caldwell parole, it did not violate any liberty interest protected by the United States Constitution."); *Echlin v. Boland*, No. 03-2309, 2004 WL 2203550, at *2 (6th Cir. Sept. 17, 2004) (prisoner could not bring a § 1983 action to challenge the information considered by the parole board because he has no liberty interest in parole); *see also Draughn v. Green*, No. 97-1263, 1999 WL 164915, at *2 (6th Cir. Mar. 12, 1999) (in order for the Due Process Clause to be implicated, false information in a prisoner's file must be relied on to a constitutionally significant degree); *Pukyrys v. Olson*, No. 95-1778, 1996 WL 636140, at *1 (6th Cir. Oct. 30, 1996) (no constitutional violation by having false information placed in a prison file); *Carson v. Little*, No. 88-1505, 1989 WL 40171, at *1 (6th Cir. Apr. 18, 1989) (inaccurate information in an inmate's file does not amount to a constitutional violation).

For all these reasons, Plaintiff fails to state a due process claim against Defendant Majerczyk.

b.      Eighth Amendment

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)). Deliberate indifference has both an objective and a subjective component. *Farmer*, 511 U.S. at 834. To satisfy the objective component, the plaintiff must allege that the medical or other physical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing

a substantial risk of serious harm. *Id.* The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Here, Plaintiff alleges nothing more than that Defendant Majerczyk negligently evaluated his need for SOP treatment. As discussed, allegations of mere negligence are insufficient to state an Eighth Amendment claim. *Farmer,* 511 U.S. at 835. Plaintiff's Eighth Amendment claim against Majerczyk therefore will be dismissed.

### 2.    Defendant Gerling

Plaintiff alleges that Defendant Gerling's decision to terminate him from the SOP violated both the Eighth Amendment and the First Amendment. Arguably, Plaintiff may also intend to assert that he was denied due process when he was terminated from the program without having an opportunity to be heard. Other allegations in the complaint suggest that Plaintiff intends to allege that Gerling discriminated against him on the basis of his race, when she terminated him for the content of his homework, but did not terminate another offender who allowed another prisoner to complete his homework. The Court will address the claims in turn.

a.     <u>Eighth Amendment</u>

Plaintiff alleges that Defendant Gerling was deliberately indifferent to his serious medical needs, in violation of the Eighth Amendment, when she terminated him from the SOP, despite knowing that the termination would cause him stress and likely preclude his parole. Plaintiff's allegations fail to state an Eighth Amendment claim.

Plaintiff does not allege, nor does the attached record suggest, that Plaintiff suffered from any serious mental impairment or illness that required mental health treatment.  Indeed, Plaintiff expressly denies that he has a serious mental health problem.  Instead, Plaintiff sought to participate in counseling as part of a sex offender treatment program solely in order to increase his suitability for parole.  "[T]he mere fact that the plaintiff[ ] [is a] convicted sexual offender [ ] does not mean that [he has] psychological disorders or that [he is] in need of psychiatric treatment." *Riddle v. Mondragon*, 83 F.3d 1197, 1204 (10th Cir. 1996) (internal quotation omitted); *see also Jones v. Steinman*, No. 97-2048, 1998 WL 791847, at *1 (6th Cir. Nov. 4, 1998) (citing *Riddle*, 83 F.3d at 1204).  In the absence of a demonstrated serious psychological disorder, plaintiff did not have a "serious medical need," and defendant's alleged failure to provide appropriate sex offender treatment does not raise an issue under the Eighth Amendment.  *See Hunt v. Colorado Dep't of Corrections*, 194 F. App'x 492, 495 (10th Cir. 2006); *Riddle*, 83 F.3d at 1204; *Ramos v. Vaughn*, No. 94–2596, 1995 WL 386577, at *5–*6 (E.D. Pa. June 27, 1995), *aff'd*, 85 F.3d 612 (3d Cir.1996); *Patterson v. Webster*, 760 F. Supp. 150, 154 (E.D. Mo. 1991). Further, it is well established that his eligibility for release on parole is not a constitutionally protected interest.  *See Crump v. Lafler*, 657 F.3d 393, 404 (6th Cir. 2011); *Sweeton*, 27 F.3d at 1164-165.  Likewise, "[t]he law is clear that limitations on, or the denial of, ... rehabilitation programs do not inflict unnecessary or wanton pain

and therefore do not constitute cruel and unusual punishment." *McQuillion v. Rushen*, 639 F. Supp. 420, 424 (N.D. Cal. 1986); *see also Gawloski v. Dallman*, 803 F. Supp. 103, 112 (S.D. Ohio 1992). Therefore, neither Defendant Gerling's termination of sex offender treatment nor the subsequent denial of parole raises a claim under the Eighth Amendment. *See Moore v. Michigan Dept. of Corrections*, No. 1:07–cv–756, 2007 WL 3124649, at *3 (W.D. Mich. Oct. 25, 2007).

b.    <u>First Amendment</u>

Plaintiff alleges that he has an unfettered right to free speech in the context of his therapy. He contends that Gerling violated that right when she terminated him from the SOP because of something he wrote.

As continually emphasized by the Supreme Court, the problems of prison administration are peculiarly for resolution by prison authorities, and their resolution should be accorded deference by the courts. *See Shaw v. Murphy*, 532 U.S. 223, 228-29 (2001); *Washington v. Harper*, 494 U.S. 210, 224 (1990); *Turner v. Safley*, 482 U.S. 78, 84-96 (1987); *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987); *Bell v. Wolfish*, 441 U.S. 520, 547 (1979); *Jones v. North Carolina Prisoners' Labor Union*, 433 U.S. 119, 125-126 (1977). These concerns are even stronger when a state penal institution is involved. *Glover v. Johnson*, 138 F.3d 229, 241 (6th Cir. 1998).

While inmates retain certain constitutional rights, prison officials may impinge on these constitutional rights if the regulation "is reasonably related to legitimate penological interests." *See Turner*, 482 U.S. at 89. To determine whether a prison official's actions are reasonably related to a legitimate penological interest, the Court must assess an official's actions by reference to the following factors: (1) whether there exists a valid, rational connection between the prison regulation and the legitimate governmental interest; (2) whether there remain alternative means of exercising

the right; (3) the impact that accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and (4) whether there are ready alternatives available that fully accommodate the prisoner's rights at de minimis cost to valid penological interests. *Turner*, 482 U.S. at 89-90. Applying this standard, the Supreme Court has upheld a variety of limitations on First Amendment protections. *See Shaw*, 532 U.S. at 229 (holding that prisoners do not have a First Amendment right to provide legal assistance to other prisoners) (*Pell v. Procunier*, 417 U.S. 817, 822 (1974) (sustaining proscriptions on media interviews); *Thornburgh v. Abbott*, 490 U.S. 401, 419 (1989) (applying *Turner* standard to a prison ban on certain publications); *Turner*, 482 U.S. at 93 (restricting inmate-to-inmate correspondence). *See also North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. at 133 (upholding prohibition on prisoner labor unions).

In the instant case, Gerling partially based her decision to terminate Plaintiff from the SOP on her assessment that the content of his writings was inconsistent with the goals and objectives of the SOP counseling.[4] Gerling's decision rested, at least in part, on the fact that the content of Plaintiff's speech evidenced a continued lack of appreciation of the purposes of the group therapy, the inappropriateness of his descriptions of his sexual escapades, and the deviancy of his behavior. (Ex. R, S, Page ID##61-64.)

Applying the *Turner* standard, Gerling's stated reasons identified a legitimate penological goal, and the basis for her termination of Plaintiff's participation bore a rational relation to that legitimate penological goal. *See McKune v. Lile*, 536 U.S. 24, 37-38 (2002) (plurality) ("A

---

[4]Other factors included Plaintiff's inability to control himself, even in SOP, demonstrated by the fact that he touched his erection repeatedly during group therapy sessions.

prison clinical rehabilitation program" for sex crime offenders bears "a rational relation to a legitimate penological objective[.]").  In *McKune*, the plurality Court recognized that a state acts constitutionally when it applies a requirement that sexual offenders admit guilt in order to participate in a sexual offender treatment program.  *Id.* at 33; *see also Lindensmith v. Petschow*, No. 12-10644, 2013 WL 1303779, at *3 (E.D. Mich. Feb. 1, 2013) (holding that the requirement that a prisoner admit guilt to participate in a Michigan SOP does not violate the Free Speech Clause of the First Amendment); *Hall v. Callejas*, No. 1:11-cv-1229, 2011 WL 6782146, at *6 (W.D. Mich. Dec. 27, 2013).  Similarly here, Gerling determined that Plaintiff's writings demonstrated that he failed to recognize the deviancy of his behaviors and that his views were inconsistent with the goals and objectives of the rehabilitation program.  The requirements that a prisoner appreciate the deviancy of his behavior and that he demonstrate sexually appropriate behaviors clearly bear a rational relationship to the legitimate penological purposes of a sexual offender treatment program.  *See McKune*, 536 U.S. at 37-38.  As a consequence, the first two prongs of the *Turner* test are met. *Turner*, 482 U.S. at 89-90.

        With respect to the third step, accommodating Plaintiff's views within the group undoubtedly would undermine the ability of the group to serve its purposes for other inmates.  Each inmate was required to read his writings to the other members of the group, and Plaintiff's titillating description of his sexual escapades was unhelpful to the therapeutic needs of other offenders.  In addition, by taking a place in the SOP therapy program while not appreciating his own deviancy, Plaintiff was preventing another prisoner on the waiting list from accessing the therapy he required.

Finally, Plaintiff had other ways in which to exercise his right to speak about his feelings. Gerling's actions simply prevented him from doing so within the context of a group therapy program.

In sum, Plaintiff's allegations fail to state a free speech claim against Defendant Gerling.

### c. Due Process

Plaintiff's allegation that Defendant Gerling terminated him from SOP, despite knowing that he needed the program for his parole, does not demonstrate a Due Process violation. Federal courts consistently have found that prisoners have no constitutionally protected interest in prison rehabilitation programs based on the Fourteenth Amendment or the Eighth Amendment. *See, e.g.*, *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) (Due Process Clause not implicated by prisoner classification and eligibility for rehabilitative programs, even where inmate suffers "grievous loss"); *Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir. 1995) (participation in a rehabilitative program is a privilege that the Due Process Clause does not guarantee); *Rizzo v. Dawson*, 778 F.2d 527, 531 (9th Cir. 1985) (no constitutional right to rehabilitative services). Plaintiff's due process claim against Gerling therefore will be dismissed.

### d. Equal Protection

Plaintiff suggests that he was subjected to racial discrimination when he was terminated from the SOP for the written responses he made in his homework, while a white SOP participant was not terminated, despite having allowed another prisoner to complete his homework.

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially

a direction that all persons similarly situated should be treated alike. U.S. CONST., amend. XIV; *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). When a law adversely impacts a "suspect class" such as one defined by race, alienage, or national origin, or invades a "fundamental right" such as speech or religious freedom, the rigorous "strict scrutiny" standard ordinarily governs, whereby such laws "will be sustained only if they are suitably tailored to serve a compelling state interest." *City of Cleburne*, 473 U.S. at 440. However, while a convicted prisoner does not forfeit all constitutional protections by virtue of his confinement, "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights . . . ." *Price v. Johnston*, 334 U.S. 266, 285 (1948). "The limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives – including deterrence of crime, rehabilitation of prisoners, and institutional security." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (citing, *inter alia*, *Turner v. Safley*, 482 U.S. 78, 84 (1987)).

To establish a violation of the Equal Protection Clause, an inmate must show that the defendants purposefully discriminated against him. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977). Such discriminatory purpose must be a motivating factor in the actions of the defendants. *Id.* at 265-66.

Plaintiff's allegation of discriminatory treatment is conclusory. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Plaintiff fails to allege sufficient facts to support a claim of intentional race discrimination by either direct or indirect evidence. *See Davis v. Prison Health Servs.*, 679 F.3d 433, 439 (6th Cir. 2012) (discussing the distinction between direct and indirect methods of proving discrimination). First, Plaintiff alleges no facts constituting

direct evidence of discriminatory motive or purpose. *See Umani v. Mich. Dep't of Corr.*, 432 F. App'x 453, 458 (6th Cir. 2011) (citing *Johnson v. Kroger Co.*, 319 F.3d 858, 865 (6th Cir. 2003)); *see also Davis*, 679 F.3d at 439. Second, Plaintiff fails to allege a *prima facie* claim under the indirect, burden-shifting framework of *McDonnell Douglas v. Green*, 411 U.S. 792 (1973), because he fails to allege that the white SOP participant was similarly situated in all relevant respects. *See Davis*, 679 F.3d at 442; *Umani*, 432 F. App'x at 458. Although Plaintiff claims that a white SOP participant also violated program requirements but was not terminated, he makes no allegation that any white prisoner was similarly situated in all relevant respects. To be a similarly-situated person member of another class, "the comparative [prisoner] 'must have dealt with the same [decisionmaker], have been subject to the same standards, and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or their employer's treatment of them for it.'" *Umani*, 432 F. App'x at 460 (quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998)). Here, the comparative prisoner allowed another prisoner to do his homework. That alleged conduct was vastly different than Plaintiff's public genital touching and sexualized writing. Plaintiff therefore fails to state an equal protection claim.

### 3. Defendant Herkelsteen

Plaintiff's allegation against Defendant Herkelsteen is limited to a single declaration that Herkelsteen was negligent when he allowed Gerling to terminate Plaintiff from the SOP. As previously discussed, allegations of mere negligence do not state a claim under the Eighth Amendment. *See Farmer,* 511 U.S. at 835. Plaintiff's claim against Defendant Herkelsteen therefore will be dismissed.

II.    <u>Pending Motions</u>

Also pending before the Court are two pending motions:  (1) Plaintiff's motion to appoint counsel, and (2) Plaintiff's motion seeking preliminary injunctive relief. In light of the Court's disposition of Plaintiff's claims, the motion to appoint counsel (docket #3) and the motion seeking preliminary injunctive relief (docket #8) are moot.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b).  Plaintiff's motions to appoint counsel and for preliminary injunctive relief will be denied as moot.

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3).  *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997).  For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal.  Should Plaintiff appeal this decision, the Court will assess the $455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated:    __December 3, 2013__          __/s/ Robert J. Jonker_____
                                        ROBERT J. JONKER
                                        UNITED STATES DISTRICT JUDGE